# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

WAYNE B. DOBSON, individually, and )
CHRISTINE A. DOBSON, individually, )
)   Case No.: 2:13-cv-00816-GMN-GWF
Plaintiff, )
vs. )   **ORDER**
)
SPRINT NEXTEL CORPORATION, a Kansas )
Corporation; SPRINT COMMUNICATIONS )
COMPANY LIMITED PARTNERSHIP, a )
Delaware limited partnership, and DOES I )
through X, inclusive, )
)
Defendants. )
)

Pending before the Court is a civil action filed in state court by Wayne B. Dobson and his wife Christine A. Dobson (collectively, "Plaintiffs") against Sprint Nextel Corporation and Sprint Communications Company Limited Partnership (collectively, "Defendants"). (ECF No. 1-1.) Defendants filed a Notice of Removal (ECF No. 1) on May 9, 2013 and subsequently filed their Motion to Dismiss Plaintiffs' Complaint. (ECF No. 15.) In response, on June 13, 2013, Plaintiffs filed their Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 17) and a Counter Motion to Amend/Correct Complaint. (ECF No. 18.) Defendants' pending Motion to Dismiss Plaintiffs' Complaint (ECF No. 15) and Plaintiffs' pending Counter Motion to Amend/Correct Complaint (ECF No. 18) have been fully briefed (ECF Nos. 19-21) and are ripe for resolution.

For the following reasons, the Court will **GRANT** Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 15) with leave for Plaintiffs to amend their complaint, and the Court will **DENY** Plaintiffs' Counter Motion to Amend/Correct Complaint. (ECF No. 18.)

## I. BACKGROUND

This case arises out of several incidents that began occurring in March of 2011 when individuals searching for lost cell phones or police officers attempting to respond to 9-1-1 emergency calls appeared at the Plaintiffs' North Las Vegas residence after being erroneously directed to that location by software provided by Defendants which tracks cell phones using GPS devices located in the phones. (Compl., ECF No. 1-1 ¶¶ 8, 9; ECF No. 19 2:10-21.) Though the complaint indicates at least three such incidents occurred, one in March of 2011 and two in December of 2012, it only provides details for the two December incidents. (Compl., ECF No. 1-1 ¶¶ 8-11.) According to the complaint, on December 18, 2012, "four young men came to Plaintiffs' house at 2:30 a.m. demanding the return of a stolen cell phone." (*Id.* ¶ 10.) Two weeks later, on December 30, 2012 at 4:00 a.m., four police officers arrived at Plaintiffs' residence in tactical gear and banged on the door. (*Id.* ¶ 11.) The officers were looking for a person who had called 9-1-1 from a Sprint cell phone but had been disconnected; officers informed Plaintiffs that Defendants' 9-1-1 location software had identified their residence as the location of the call. (*Id.*)

In response to these incidents, Plaintiffs filed this action alleging unreasonable intrusion upon seclusion of another, false light, intentional infliction of emotional distress, negligence, and negligence performance of an undertaking. (*Id.* ¶¶ 12-56.) Plaintiffs assert that Defendants knew or should have known that individuals were being wrongly directed to Plaintiffs' residence and that Defendants acted maliciously or with reckless disregard to the consequences suffered by Plaintiffs. (*Id.* ¶¶ 14, 17, 19, 24, 27, 31, 32, 36, 39, 40, 44, 47, 48, 52.) Plaintiffs further assert that as a result of these incidents, they have endured stress, anxiety, disparagement of character, fear, emotional distress, and pain and suffering. (*Id.* ¶¶ 18, 26, 35, 43, 54.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v.*

*Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

  **B.** **Motion to Amend**

  Once the time period to amend as a matter of course in Rule 15(a)(1) of the Federal Rules of Civil Procedure has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, Rule 15(a)(2) further instructs that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**III.** **DISCUSSION**

  **A. Motion to Dismiss**

  In their complaint, Plaintiffs allege claims against Defendants for unreasonable intrusion upon seclusion of another, false light, intentional infliction of emotional distress, negligence, and negligence performance of an undertaking. (Compl., ECF No. 1-1 ¶¶ 12-56.) In their

Motion to Dismiss Plaintiffs' Complaint (ECF No. 15), Defendants assert that Plaintiffs have failed to allege at least one necessary element for each of their claims, and therefore, their complaint should be dismissed.

### a. Unreasonable Intrusion upon Seclusion

To recover for the state common law tort of intrusion, a plaintiff must prove the following elements: (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person. *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995), *overruled in part on other grounds*, 940 P.2d 134 (Nev. 1997). In order to have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable. *M & R Investment Co.*, 748 P.2d 488, 493 (Nev. 1987). Furthermore, "[t]he extent to which seclusion can be protected is severely limited by the protection that must often be accorded to the freedom of action and expression of those who threaten that seclusion of others." *People for Ethical Treatment of Animals*, 895 P.2d at 1279 (citing 2 Fowler V. Harper, et al., *The Law of Torts*, § 9.6, at 636 (2d ed. 1986)). For example, it is no invasion of privacy to photograph a person in a public place or for the police, acting within their powers, to photograph and fingerprint a suspect. *Id.* (citations omitted).

"The question of what kinds of conduct will be regarded as a 'highly offensive' intrusion is largely a matter of social conventions and expectations." *Id.* at 1281 (quoting J. Thomas McCarthy, *The Rights of Publicity and Privacy*, § 5.10(A)(2) (1993)). The Nevada Supreme Court, however, has prescribed the following factors to assist courts in determining whether a particular action is highly offensive: "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the

setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* at 1282.

Taking all material allegations in the complaint as true and construing them in the light most favorable to the plaintiff, Plaintiffs have failed to adequately plea their claim for unreasonable intrusion upon seclusion. Specifically, the complaint fails to adequately plead a "highly offensive" intrusion.

In their complaint, Plaintiffs only provide four paragraphs of facts detailing the incidents that underlie all of their claims (Compl., ECF No. 1-1 ¶¶ 8-11.) These paragraphs assert that Defendants provide a cell phone locating service, (*Id.* ¶ 8), that "at various times … individuals have appeared at Plaintiffs' residence … accusing Plaintiffs of stealing their Sprint cell phones," (*Id.* ¶ 9), that these individuals were directed to Plaintiffs' residence by Defendants' service, (*Id.*), that on one such occasion "four young men came to Plaintiffs' house at 2:30 a.m. demanding the return of a stolen cell phone," (*Id.* ¶ 10), and that on another such occasion "at 4:00 a.m., four police officers arrived at Plaintiffs' residence in tactical gear, banging on the door and seeking a person in distress." (*Id.* ¶ 11.) The Complaint provides no addition facts relating to the incidents alleged to have occurred "at various times" beyond the conclusory statements that Defendants "knew or should have known that these intrusion would be highly offensive to a reasonable person" and that these incidents "result[ed] in stress, anxiety, disparagement of character, harassment, fear, emotional distress and pain and suffering." (*Id.* ¶¶ 21-28.)

First, the Court finds that a person does have a reasonable expectation of privacy in their own home, particularly at night when most individuals are asleep. However, arriving at someone's home and merely knocking on the door, even if the visitor is unwelcome, is not necessarily an intrusion upon a person's protected expectation of seclusion. *See Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 466 (9th Cir. 1997) (affirming the district court's

1 dismissal of an intrusion upon seclusion claim against a reporter who spoke with the plaintiff at
2 her front door, but did not enter her home).  On the other hand, such unwanted visits may rise
3 to the level of an intrusion if by their frequency or level of interference they are sufficiently
4 disruptive that a trier of fact could determine that the visits intruded upon the person's
5 expectation of privacy in their home. *See Kuhn v. Account Control Tech., Inc.*, 865 F. Supp.
6 1443, 1448-49 (D. Nev. 1994) (finding repeated harassing phone calls by a debt collector while
7 the plaintiff is at work to be an intrusion).  Here, while the Complaint could have alleged more
8 details supporting Plaintiffs' claim, at least two visits to Plaintiffs' home in the middle of the
9 night in less than two weeks, one by agitated young men demanding the return of their missing
10 cell phone and one by armed law enforcement attempting to locate someone in distress, is
11 sufficient for a trier of fact to reasonably conclude that Plaintiffs' expectation of privacy while
12 in their home had been intruded.

13    Plaintiffs' Complaint, however, fails to allege an intrusion that was highly offensive.
14 First, considering the degree of the intrusion, Plaintiffs' Complaint merely alleges that on three
15 or more occasions over the course of two years individuals approached their home and knocked
16 on their door.  The Complaint does not allege that the individuals who arrived at Plaintiffs'
17 residence did anything more than bang on their front door and demand either a cell phone or to
18 be directed to a person in distress.  Their conduct is not alleged to have exceeded the level of an
19 innocent encounter.  Second, regarding the circumstances of the intrusion, while two of these
20 occasions occurred late at night during a more vulnerable setting—once by four young men
21 accusing the Plaintiffs of stealing a phone and once by police in tactical gear banging on the
22 door—the Complaint does not allege that any of the unwanted visitors' conduct exceeded the
23 reasonable scope of the circumstances.  Their Complaint does not allege that the individuals
24 attempted to enter or force their way into the residence, stay for any length of time, or step
25 beyond the front door.  Third, regarding the intruder's motives, there are no allegations that any

of the visitors were abusive or did anything beyond demanding the return of a cell phone or information about a 9-1-1 call. The motives and objectives do not appear to be highly offensive but rather reasonable in light of the erroneous information provided to them. Finally, and most notably, Plaintiffs' Complaint fails to allege that these incidents occurred so frequently as to rise above the level of ordinary inconvenience.

There are insufficient facts alleged in the Complaint to find these visits were intentionally orchestrated by Defendants for the purposes of harassing Plaintiffs. However, Plaintiffs do allege the visits occurred as a result of Defendants' reckless disregard for the Plaintiffs' privacy. Therefore, while the Plaintiffs do have a reasonable expectation of privacy in their own home at night, they merely fail in their Complaint to allege sufficient facts to support an intrusion of that privacy rising to the level of being "highly offensive" as required by the Nevada Supreme Court in *People v. Berosini*, *supra*. Therefore, Plaintiffs' intrusion upon seclusion claim is dismissed without prejudice.

While it is conceivable that these incidents were much more numerous and severe in nature than just the three incidents alleged in the Complaint and that the combination of these incidents rose to the level of a highly offensive intrusion, Plaintiffs have not pled sufficient factual content to allow the Court to draw these inferences.[1]

### b. False Light

---

[1] The Court notes that in their Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 17), Plaintiffs included numerous additional facts about these incidents that would have likely allowed their claim to survive Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 15), including that there have been "dozens of intrusions," (ECF No. 17 6:19-21), that multiple strangers appeared at Plaintiffs' home in the middle of the night pounding on their door and demanding cell phones, (*Id.* 7:4-9), that Plaintiffs have purchased a firearm and installed a security system as a result of these visits, (*Id.* 7:21-24), that Mr. Dobson now sleeps on the couch downstairs in an effort to avoid waking Mrs. Dobson when visitors arrive, (*Id.*), and that Plaintiffs awoke one night to find a trespasser wandering through their backyard with a flashlight. (*Id.* 2:10-16.) Because these facts were not pled in the Complaint, however, the Court could not consider them in this motion. *See Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19.

The Nevada Supreme Court has explicitly recognized the existence of a cause of action for publicity unreasonably placing another in a false light before the public. *People for Ethical Treatment of Animals*, 895 P.2d at 1278. Beyond that recognition, however, there is little Nevada case law mentioning the tort of false light. The Restatement (Second) of Torts states:

> One who gives publicity to a matter concerning another that places the other before the public in false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977). "'Publicity' ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) Torts § 652D cmt. a. Furthermore, "[f]alse light, like defamation, requires at least an implicit false statement of objective fact." *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (citing Restatement (Second) of Torts § 652E(b)). Moreover, like defamation, false light requires actual malice. *Id.* Finally, in Nevada, "[t]he false light privacy action differs from a defamation action in that the injury in privacy actions is mental distress from having been exposed to public views, while the injury in defamation actions is damage to reputation." *People for Ethical Treatment of Animals*, 895 P.2d at 1273 n. 4 (quoting *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir. 1983)).

Here, Plaintiffs have failed to adequately plead the mental distress damages for their false light claim. Construing their Complaint broadly, Plaintiffs allege that Defendants publicized to police, to their neighbors, and to all of Defendants' customers who use Defendants' locating service in the area around Plaintiffs' home a false statement—that

Plaintiffs are stealing cell phones and committing other unspecified crimes or hindering police from aiding 9-1-1 callers. (Compl., ECF No. 1-1 ¶¶ 8-11, 49-51.)  While this publicity does not rise to the same level as publishing a false statement in a book or newspaper article, it is substantially more than uttering false statements to a few co-workers and is sufficient to constitute publicity in a false light claim. *Compare Flowers v. Carville*, 266 F. Supp. 2d 1245, 1252 (D. Nev. 2003) (finding false statements in a published book to be sufficient publicity) *with Huston v. Verizon Fed. Network Sys.*, *LLC*, 2:07-CV-00201-BES-LRL, 2008 WL 4279418, at *5 (D. Nev. Sept. 17, 2008) (finding statements uttered to a few co-workers and a potential employer did not constitute publicity).  Furthermore, causing Plaintiffs' neighbors, law enforcement, and all of Defendants' customers in Plaintiffs' surrounding area to believe that Plaintiffs are criminals or are aiding criminals is highly offensive and more than a "trivial indignity" as Defendants have suggested. (ECF No. 15 6:23-716.)

        Plaintiffs also allege that Defendants acted with actual malice by knowingly placing Plaintiffs in the false light and that Defendants acted with reckless disregard for the emotional distress they have caused Plaintiffs. (Compl., ECF No. 1-1 ¶¶ 47-48, 52.)  Plaintiffs, however, have failed to sufficiently allege emotional distress in their Complaint because they did not allege any physical injury or illness caused by the emotional distress, which is required when there is no physical impact to a plaintiff.  *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010); *see also Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) ("[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented.").

        There is no allegation in their Complaint that Plaintiffs have sought psychiatric assistance, suffer physical symptoms, or are taking medication for their distress. The only harm

Plaintiffs allege in their Complaint is that they have endured stress, anxiety, disparagement of character, fear, emotional distress, and pain and suffering.[2] (Compl., ECF No. 1-1 ¶¶ 18, 26, 35, 43, 54.) These claims are not objectively verifiable and will not support emotional distress damages in Nevada for a tort arising out of a purely emotionally upsetting situation, as opposed to a physical injury. *See Betsinger*, 232 P.3d at 436. Therefore, as currently pled, Plaintiffs' false light claim fails and must be dismissed without prejudice.

### c. Intentional Infliction of Emotional Distress

The elements of a cause of action pursuant to state law for intentional infliction of emotional distress ("IIED") are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999). "Extreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citing Cal. Jury Instr.--Civ. 12.74).

Here, Plaintiffs have again failed to properly plead severe or extreme emotional distress. The section of Plaintiffs' Complaint asserting a claim for IIED merely states that "Defendants' actions display an extreme and outrageous conduct with the [sic] reckless disregard for causing emotional distress to Plaintiffs." (Compl., ECF No. 1-1 ¶ 42.) Reading the Complaint as a whole, however, Plaintiffs allege that Defendants engaged in extreme and outrageous conduct by first making available a software that directs individuals looking for lost Sprint cell phones and law enforcement looking for 9-1-1 callers to Plaintiffs' home, and second, by continuing to

---

[2] Again, the Court notes that some of the additional facts contained in Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 17) may have aided Plaintiffs in sufficiently pleading their claims. However, the Court could not consider these facts in ruling on this motion. *See Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19.

provide this faulty software for over two years despite knowing that it was causing angry individuals and anxious police officers to arrive at Plaintiffs' home in the middle of the night. Deliberately or knowingly directing these angry individuals and anxious officers to the wrong location—disrupting Plaintiffs life and placing Plaintiffs in potentially dangerous situations—could be found by a reasonable jury to be sufficiently extreme and outrageous conduct to satisfy the first element.

As with their false light claim, however, Plaintiffs have failed to allege any objectively verifiable physical injury or illness to support their emotional distress damages. *See Betsinger*, 232 P.3d at 436.   Therefore, as currently pled, Plaintiffs' IIED must fail and is dismissed without prejudice.

### d. Negligence

To succeed on a state common law claim for negligence, a plaintiff must show (1) a duty owed by defendants to plaintiff; (2) a breach of that duty by defendants; (3) causation; and (4) damages. *Sanchez v. Wal-Mart Stores, Inc*., 221 P.3d 1276, 1280 (Nev. 2009).  With regard to the duty element, defendants have a duty to exercise reasonable care to avoid foreseeable harm proximately caused by his or her negligent act, and it is the courts and not juries that have the ultimate responsibility of defining duty in relation to particular circumstances and to define the legal standard of reasonable conduct "in the light of the apparent risk." *Ashwood v. Clark Cnty.*, 930 P.2d 740, 742 (Nev. 1997) (quoting W. Prosser, *Law of Torts*, § 53 at 324 (4th ed. 1971)); *see also Dakis for Dakis v. Scheffer*, 898 P.2d 116, 118 (Nev. 1995).

Furthermore, "where an unforeseeable supervening cause intervenes between a defendant's negligence and a plaintiff's injury, the defendant is relieved of liability.  However, where a third party's intervening intentional act is reasonably foreseeable, a negligent defendant is not relieved of liability." *Dakis for Dakis*, 898 P.2d at 118 (citing *El Dorado Hotel*

*v. Brown*, 691 P.2d 436, 441 (Nev. 1984)).  Moreover, whether a particular harm is foreseeable is generally a question for the trier of fact.  *Merluzzi v. Larson*, 610 P.2d 739, 742 (Nev. 1980).

Here, while Plaintiffs have sufficiently alleged duty, breach, and causation, they have again failed to properly plead damages.  In creating and offering to its customers and emergency responders a phone locator service, Defendants owed a general duty of reasonable care to ensure that the service functioned properly and to correct the service after learning that users were being erroneously directed to the wrong location.  Plaintiffs allege that duty was breached when Defendants' provided the faulty service and failed to repair the service upon learning of its deficiencies, causing harm to Plaintiffs. (Compl., ECF No. 1-1 ¶¶ 13-18.)

Defendants contend that they owed no duty to the Plaintiffs because under Nevada common law principles no duty is owed to control the dangerous conduct of another or to warn others of the dangerous conduct unless a special relationship exists between the defendant and the victim and the harm created by the defendant's conduct is foreseeable. (ECF No. 15 13:11-27) (citing *Sanchez*, 221 P.3d at 1280-81).  It is important, however, to distinguish between allegations of negligence on the part of Defendants in creating and providing a phone locating service that erroneously directs individuals to Plaintiffs' home and negligence in not controlling or warning Plaintiffs about the potentially harmful conduct of those directed by Defendants' service.  Plaintiffs have not alleged that Defendants were negligent in failing to protect them from the actions of Defendants' customers and law enforcement, rather they have alleged that Defendants were negligent in creating and providing a faulty locator service that caused the foreseeable consequence of having agitated, unwanted visitors arrive at their home in the middle of the night.  While Defendants may not have a special duty to ensure the safety of Plaintiffs arising out of a relationship between the parties, Defendants do have a general duty to exercise reasonable care in their actions and would be liable for any foreseeable harm to Plaintiffs caused by their negligence.

Plaintiffs have sufficiently pled duty, breach, and causation, but again have failed to allege any objectively verifiable physical injury or illness to support their emotional distress damages. *See Betsinger*, 232 P.3d at 436. Therefore, as currently pled, Plaintiffs' negligence claim must fail and is dismissed without prejudice.

### e. Negligent Performance of an Undertaking

For state claims of negligent performance of an undertaking, Nevada follows the Restatement (Second) of Torts, which reads as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> 
> (a) his failure to exercise such care increases the risk of such harm, or
> 
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> 
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 323 (1977); s*ee e.g.*, *Wiseman v. Hallahan*, 945 P.2d 945, 947-48 (Nev. 1997); *Wright v. Schum*, 781 P.2d 1142, 1144-45 (Nev. 1989).

The claim of negligent performance of an undertaking is inapplicable to this case. In order to be liable under a claim for negligent performance of an undertaking, "one [must] undertake[] … *to render services to another* [and] is subject to liability *to the other* for physical harm resulting from his failure to exercise reasonable care to perform his undertaking…." Restatement (Second) of Torts § 323 (emphasis added). Plaintiffs do not allege that Defendants have undertaken to render a service *to them* necessary for the protection of Plaintiffs or Plaintiffs' things, rather Plaintiffs allege that Defendants were negligent in creating and

providing a phone locator program to Defendants' customers and law enforcement. (Compl., ECF No. 1-1 ¶ 30.) That allegation, however, is the basis of their general negligence claim not a claim for negligent performance of an undertaking. Because Plaintiffs do not allege that Defendants undertook to render a service to them, their negligent performance of an undertaking claim fails and is dismissed with prejudice.

### f. Punitive Damages

Plaintiffs seek punitive damages pursuant to Nevada Revised Statutes 42.005, which provides that:

> …in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant.

Nev. Rev. Stat. § 42.005. "'Malice, express or implied' means conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." Nev. Rev. Stat. § 42.001(3). "'Conscious disregard' means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." Nev. Rev. Stat. § 42.001(1). "[Conscious disregard] plainly requires evidence that a defendant acted with a culpable state of mind.... [A]t a minimum, [it] must exceed mere recklessness or gross negligence." *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008).

Plaintiffs allege that Defendants "knew or should have known that the failure of their location services [was] erroneously directing persons and emergency personnel to Plaintiffs' residence" and that such conduct was "malicious and/or in reckless disregard of the consequences to Plaintiffs," which include "stress, anxiety, disparagement of character,

harassment, fear, emotional distress, and pain and suffering…." (Compl., ECF No. 1-1 ¶¶ 53-55.)  These allegations are sufficient for Plaintiffs to meet their initial burden in pleading punitive damages.

### g. Immunity under State and Federal Law

Defendants assert that pursuant to the federal Wireless Communications and Public Safety Act of 1999 (the "Act") and Nevada Revised Statutes Section 707.500, Defendants are immune from any liability for providing information to police and emergency personnel regarding 9-1-1 calls. (ECF No. 15 14:21-15:12.)

First, Defendants' reliance on the Act is misplaced.  Contrary to Defendants' assertion and a plain reading of their artfully edited quotation of the statute, the Act does not independently provide immunity for all wireless carriers in releasing subscriber information to law enforcement and emergency personnel.  Instead, the Act guarantees parity of immunity for wireless carriers under state laws that already protect landline telephone service providers. Section 615a of the Act, which is entitled "Service provider parity of protection," provides that:

> A wireless carrier … *shall have immunity or other protection from liability in a State of a scope and extent that is not less than the scope and extent of immunity or other protection from liability that any local exchange company ... have under Federal and State law …*, including in connection with an act or omission involving the release to a PSAP, emergency medical service provider or emergency dispatch provider, public safety, fire service or law enforcement official, or hospital emergency or trauma care facility of subscriber information related to emergency calls, emergency services, or other emergency communications services.

47 U.S.C. § 615a(a) (emphasis added); *see also* 47 U.S.C. § 153(32) ("The term 'local exchange carrier' means any person that is engaged in the provision of telephone exchange

service or exchange access."). Therefore, the Court must look to Nevada state law to determine what immunity, if any, is given to Defendants in providing information to law enforcement related to 9-1-1 calls.

The applicable Nevada law is Section 707.500 of the Nevada Revised Statutes, which provides:

> A telephone company, person providing wireless or commercial mobile radio service, public safety answering point, or manufacturer supplying equipment to a telephone company or public safety answering point, or any agent thereof, is not liable *to any person who uses an enhanced 911 service* for:
> (a) The release of the telephone number and street address of the telephone used to place the 911 telephone call, including telephone numbers which are not published, if the release was made in good faith;
> (b) The failure of any equipment or procedure in connection with the provision of an enhanced 911 service; or
> (c) Any act, or the omission of any act, committed in good faith, while providing, or while in training to provide, services through a public safety answering point.

Nev. Rev. Stat. § 707.500(1) (emphasis added). Plaintiffs argue that this statute only immunizes wireless service providers from liability to any person who actually used the 9-1-1 service (ECF No. 17 23:23-24:18.) Therefore, because Plaintiffs did not use the 9-1-1 service, the statute does not provide Defendants immunity from their claims. (*Id.*) Alternatively, Defendants argue that Plaintiffs here are "potential users" and that such a narrow reading of the statute's provision of immunity is improper (ECF No. 19 15:13-16:2.)

There is no Nevada case law interpreting the statute, and the one case from a foreign jurisdiction that cites the statute does not discuss the scope of the immunity. *See Wilson v. City*

*of Jersey City*, 39 A.3d 177, 194 (N.J. 2012) (finding Nev. Rev. Stat. § 707.500 similar to the corresponding New Jersey statute). Therefore, the Court interprets the language of the statute by its plain meaning.

The equivalent statutes in many of Nevada's sister states include language that grants wireless operators broad immunity in providing law enforcement with information relating to 9-1-1 calls. *See e.g.,* Wash. Rev. Code § 38.52.550 ("A telecommunications company … providing emergency communications systems or services … to enhanced 911 emergency communications personnel is not liable for civil damages caused by an act or omission of the company, business, or individual"); Colo. Rev. Stat. § 29-11-105 ("No basic emergency service provider … shall be liable *to any person* or entity for infringement or invasion of the right of privacy of any person caused … by any act or omission in connection with the installation, operation, maintenance, removal, presence, condition, occasion, or use of emergency service features") (emphasis added). In contrast, the plain meaning of the language in the Nevada statute is that wireless service providers are only immune from liability to those who actually used their 9-1-1 service. Nev. Rev. Stat. § 707.500(1). If the Nevada Legislature had intended broad immunity for service providers, then this Court must presume they would have used broad language similar to that used by the legislatures in other states. Therefore, under the facts presented here, the Court finds that Nev. Rev. Stat. § 707.500 does not immunize Defendants from any of Plaintiffs' claims arising from the provision of Plaintiffs' information to law enforcement and emergency personnel.

**B. Motion to Amend**

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

First, the Court finds no evidence of undue delay or bad faith. Second, the Court has found that if Plaintiffs had simply alleged certain facts found in their Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 17) in their original Complaint then at least one of the claims in Plaintiffs' original Complaint would have survived Defendants' Motion to Dismiss. (ECF No. 15.) Therefore, amending Plaintiffs' Complaint would not be futile.

Local Rule 15-1, however, requires that a party moving to amend a pleading must attach the proposed amended pleading to their motion to amend, and if that party's motion to amend is granted, then the attached pleading shall be filed and served. D. Nev. L.R. 15-1. While Plaintiffs did attach a document entitled "Amended Complaint" to their Counter Motion to Amend/Correct Complaint (ECF No. 18-2), with the exception of the style of the case being changed to reflect that the matter is now in federal court, the correction of one typographical error, and the addition of the word "Amended" before "Complaint" in the title of the motion, Plaintiffs' attached "Amended Complaint" (Amended Compl., ECF No. 18-2) is identical to the original Complaint (Compl., ECF No. 1-1) filed in state court. Because this Court has found Plaintiffs' original complaint to be deficient for bringing any of its claims, filing this "Amended Complaint" would be futile in allowing the Plaintiffs to avoid dismissal. The Court, therefore, **DENIES** Plaintiffs' Motion to Amend without prejudice. (ECF No. 18.)

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 15) is **GRANTED** with leave for Plaintiffs to amend their Complaint. Plaintiffs have until February 24, 2014 to file an amended complaint correcting the deficiencies described in this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Counter Motion to Amend/Correct Complaint (ECF No. 18) is **DENIED without prejudice**.

**DATED** this 10th day of February, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge